**Affirmed and Opinion filed April 19, 2016.**



In The

# Fourteenth Court of Appeals

NO. 14-15-00073-CR
NO. 14-15-00074-CR

**JESSE CLYDE RODERICK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1383842 & 1383843**

## O P I N I O N

A jury convicted appellant Jesse Clyde Roderick of two counts of aggravated sexual assault of a child. *See* Tex. Penal Code § 22.021. The jury assessed appellant's punishment at life imprisonment. On appeal, appellant argues the trial court abused its discretion by refusing to allow the defense to present certain defensive theories, including that of an alternate perpetrator, and committing errors in certain evidentiary rulings. We affirm.

# I. BACKGROUND

In July 2011, the complainant, J.M., made an outcry statement to her foster mother that she had been sexually abused in the past by the appellant, a family friend. At the time of the statement, J.M. was five years old. J.M. told her foster mother that appellant made her perform oral sex on him, performed oral sex on her, penetrated her vagina and anus with his penis, and digitally penetrated her anus. J.M.'s foster mother informed her foster care agency, which then contacted the Texas Department of Family and Protective Services (CPS).

During a forensic interview, J.M. reported that appellant put his finger in her vagina. She stated that it hurt when something was inside her private area, and that she developed a rash from being rubbed "down there." J.M. also underwent a medical examination that revealed a white, triangular, anal scar consistent with blunt force trauma.

Following the investigation, appellant was indicted on two counts of aggravated sexual assault of a child under fourteen years of age. At trial, three years after her initial outcry, J.M. did not remember anything penetrating her vagina or anus, but testified that appellant pulled down her pants, put his penis in her mouth, and "peed." J.M. drew a picture of appellant's penis and further testified that appellant touched her up at the top of her legs and her "private." The State also presented testimony from William Floyd Kent, a jailhouse informant, who testified that the appellant bragged about what he did, specifically that he taught J.M. the proper way to perform oral sex and rubbed his penis against her anus and vagina.

At the conclusion of trial, the jury found appellant guilty and assessed punishment at life imprisonment. The trial court sentenced appellant in accordance with the jury's assessment of punishment.

## II. ANALYSIS

Appellant contends the trial court abused its discretion by refusing to allow him to present defensive theories, including the defense of an alternate perpetrator.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). If the trial court's decision was within the bounds of reasonable disagreement, we will not disturb its ruling. *See Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). If the trial judge's decision is correct on any theory of law applicable to the case, however, it will be sustained. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

### B. Excluded Evidence

#### 1. Alternate Perpetrator Evidence

Appellant contends the trial court abused its discretion by not allowing the jury to hear evidence of possible alternate perpetrators, namely Donald Cowart and Dennis Esquivel. Specifically, appellant argues the trial court abused its discretion by 1) ruling that disclosures made to Claudia Mullin, the CPS forensic interviewer, regarding sexual abuse alleged to have been committed by Cowart against J.M. and her brothers were inadmissible; and 2) ruling that testimony regarding CPS's knowledge that Esquivel was a convicted sex offender and lived with J.M.'s mother was inadmissible. The trial judge sustained the State's objections to this evidence.

We first note that:

"[a]lthough a defendant obviously has a right to attempt to establish his innocence by showing that someone else committed the crime, he

still must show that his proffered evidence regarding the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged 'alternative perpetrator.'"

*Wiley v. State*, 74 S.W.3d 399, 406 (Tex. Crim. App. 2002) (emphasis added).

"Although it is unclear exactly how much evidence is necessary to sufficiently prove a nexus between the offense and allegedly guilty third party, Texas jurisprudence is clear that evidence of third party guilt is inadmissible if it is mere speculation that another person may have committed the offense." *Dickson v. State*, 246 S.W.3d 733, 739 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Moreover, the admission of alternative perpetrator evidence is subject to the Rule 403 balancing test, according to which the trial court must weigh its probative value against its tendency to confuse the issues or mislead the jury, among other potential harms. *See* Tex. R. Evid. 403; *Wiley*, 74 S.W.3d at 406–07; *Dukes v. State*, No. 01-14-00938-CR, 2016 WL 828106, at *4 (Tex. App.—Houston [1st Dist.] Mar. 3, 2016, no pet. h.). Finally, excluding such evidence is not constitutional error unless the evidence "goes to the heart of the defense." *Wiley*, 74 S.W.3d at 405.

We begin with the exclusion of Mullin's testimony recounting her interview with J.M. It is important to our analysis of the trial court's ruling to place the specific excluded evidence in context. Appellant urges that the jury was entitled to "hear about the disclosures [J.M.] made to Mullin regarding sexual abuse alleged to have been committed by Cowart against J.M." Specifically, appellant refers to the following testimony developed by bill of exception:

Q.     And then at one point [J.M.] said that—she was talking about when [her brother] was getting rubbed and she had said that [her brother] would wake up when he would feel someone rubbing him. Do you remember that?

4

A.    Yes.

Q.    And then at that time when you would ask her, she said that they only rubbed [her brother], they did not rub her?

A.    I believe that she did say it like that in the beginning.

Q.    Right.

A.    Which is very standard defense mechanism for a child.

Q.    And by "they," she was referring to, I guess, [appellant] and [Cowart] it seemed?

A.    I guess those are the two people she said she was left with.

Q.    Okay. And she also disclosed that [Cowart] had done things to her as well, correct?

A.    Yes.

Q.    I think she—said that [Cowart] almost tried to have sex with her and she kind of—is that when she spelled out sex, S-E-X?

A.    I want to be sure before I answer. [Cowart], you know what, people takes kids clothes off and their underwear [sic].

Q.    Yes.

A.    And he was rubbing our bodies, I mean, making us rub his body. And he almost made me have, like, I am not about to say it. It's gross. And then she went into—

Q.    Sex.

A.    —S-E-X and then s-s-s-s- and then sex, yeah.

Q.    Right. And then she was describing another individual that was making her rub up on, I guess, her brother[]'s body?

A.    Yes.

Q.    And then [Cowart] was also taking her clothes off and her underwear off, correct?

A.    Yes.

Q.    And then trying to make her have sex with her and that's when she also described sex as being a boy is on top and the girl being on the bottom?

A.    No, I believe that was when we were talking about [appellant],

5

because that is when I was asking her to tell me about the position her body was in when he was touching her, so that was not [Cowart] at that point.

Q.    Well, right after when she spelled out sex, that's when—that's when she says when you get on top of each other and the girl is on the bottom and the boy is on top, correct?

A.    Okay. Sorry. Let me make sure. Okay. Well, she is saying "he." It could have been either one at that point.

Q.    And she had just been talking about [Cowart] was the one who was trying to have sex with her, right?

A.    Right. And prior to that I was asking her about [appellant]. So, yeah, it was—but I—yeah, I think at that point she probably was referring more to [Cowart].

Q.    And that was also when she was then talking about people sucking the middle parts as well, correct?—right after that when she was describing what sex is?

A.    That is what comes up next.

Q.    Okay.

The trial court excluded this evidence under Rule 403 noting that "it would be confusing to the jury to submit the requested questioning, lines of questioning, to the jury." *See* Tex. R. Evid. 403. We conclude that this evidentiary ruling is not an abuse of discretion. The excerpted exchange with Mullin is ambiguous on time and identity. Specifically, it is unclear from Mullin's statements, then corrections, and uncertainty throughout this testimony whether Mullin is referring to J.M.'s recount of the offense, or some other time when Cowart "almost tried" to have sex with J.M. or take her clothes off. And, that confusion in Mullin's testimony is compounded by her uncertainty about which "he" J.M. was talking about at any particular time.

Even if we were to determine that the exclusion of this evidence constituted error, however, we would find that its exclusion did not, as appellant argues,

6

impede his ability to present an "alternate perpetrator" defense. Specifically, during J.M.'s testimony, she acknowledged that with regard to whether it was appellant or Cowart that "did me" she "might have got the two mixed up." J.M. also stated at one point that she did not remember who touched her, "but it was probably [appellant]." In response to defense counsel's question that "it could have been [Cowart]" J.M. testified, "[y]eah, but [Cowart] didn't do as much." Thus, we conclude that, even if the admission was erroneous, J.M.'s own testimony about the potential alternate perpetrator afforded appellant the opportunity to present Cowart as the possible "alternate perpetrator." As such, the exclusion of the evidence does not go to the "heart of the defense" and is not constitutional harm.

Next, we turn to the exclusion of evidence regarding CPS's knowledge that Esquivel was a convicted sex offender and lived with J.M.'s mother.

Appellant argues the trial court abused its discretion by precluding him from offering into evidence Esquivel's conviction for sexual assault of a child. Defense counsel proffered a judgment of conviction entered against Esquivel on March 1, 1995. The State argued that the conviction was too remote to be admissible. *See* Tex. R. Evid. 609.[1] The trial court sustained the objection and excluded the evidence. On appeal, appellant concedes that the evidence was properly excluded under Rule 609, but argues that Esquivel's prior conviction was relevant to advance the defensive theory that Esquivel could have been an alternative perpetrator. However, as previously discussed, an appellant must show that his proffered evidence regarding the alleged alternative perpetrator is sufficient to show a *nexus* between the specific offense and the alleged alternative perpetrator.

---

[1] Generally, Rule 609 allows a party to attack a witness's character for truthfulness with a witness's prior criminal conviction if the crime was a felony or involved moral turpitude; the probative value of the evidence outweighs its prejudicial effect; and if more than 10 years have passed since the witness's conviction or release, whichever is later; the probative value substantially outweighs its prejudicial effect.

7

*See Wiley*, 74 S.W.3d at 406. J.M. never alleged that she had been assaulted by Esquivel and there is no evidence in the record connecting Esquivel with the sexual assault committed against J.M. In fact, when arguing this evidence to the trial court, appellant's counsel stated "I'm not getting into whether [Esquivel] abused the child, penetrated the child, touched the child, or anything like that."

In short, appellant urged a right to present the jury with evidence that Esquivel had access to the children and was a convicted sex offender. The trial court permitted appellant to ask about Esquivel living in the home with J.M.'s mother. Appellant now concedes that Esquivel's conviction was properly excluded and appellant conceded at trial an absence of any evidence connecting Esquivel to this offense. As such, we conclude that appellant has presented no error for our review.

### 2. J.M.'s Exposure to Sexual Acts

Appellant contends the trial court erred by disallowing evidence that J.M.'s sexual knowledge was attributable to sexual activity she witnessed at home. Appellant suggests this evidence would have affected J.M.'s credibility because her prior exposure to other sexual activity may have caused her to be confused or mistaken about her allegations. The State argues this evidence was not relevant to show an alternate source for J.M.'s sexual knowledge. We agree.

Texas Rule of Evidence 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is generally admissible. *See* Tex. R. Evid. 402; *Erazo v. State*, 144 S.W.3d 487, 499 (Tex. Crim. App. 2004). Irrelevant evidence is inadmissible. *See* Tex. R. Evid. 402.

> To show the relevancy of a child victim's prior sexual conduct as an alternate source of sexual knowledge, the defendant must establish that the prior acts clearly occurred and that the acts so closely resembled those of the present case that they could explain the victim's knowledge about the sexual matters in question.

*Hale v. State*, 140 S.W.3d 381, 396 (Tex. App.—Fort Worth 2004, pet. ref'd).

Mullin's testimony during defense counsel's offer of proof revealed that J.M. witnessed appellant and her slightly older brother, J.S., engaging in oral sex. As the State concedes, the proffered evidence suggests that J.M. may have been familiar with male anatomy, and may have understood the concept of oral sex as a result of having witnessed sexual contact between the appellant and J.S. However, witnessing oral sex is not the same as undergoing the experience of it and being able to describe one's own physical reaction to it. The excluded evidence does not account for J.M.'s ability to describe how her "private area" felt after being touched. During CPS forensic interviews, J.M. demonstrated how the appellant would touch her, how it felt, and described a rash she developed as a result of being touched. This evidence also does not account for J.M.'s ability to describe the taste she experienced when the appellant made her perform oral sex. Therefore, the evidence proffered by the appellant fails to support his theory that J.M.'s sexual knowledge was attributable to sexual activity she witnessed at home. Because appellant did not establish that the prior acts so closely resembled those of the present case that they could explain J.M.'s knowledge about the sexual matters in question, the trial court did not abuse its discretion. *See id.*

### 3. Testimony Regarding a Specific Instance of Violence Between Appellant and Cowart

Appellant contends the trial court erred by excluding testimony regarding an incident of domestic violence in which Cowart allegedly severed appellant's

thumb. Appellant suggests that this evidence should have been admitted to show J.M. was traumatized as a young child, and therefore could have been mistaken with regard to her current allegation. Defense counsel made the following offer of proof from Mullin:

Q:    Another story that J.M. told you about was [appellant's] thumb getting, like, cut off or pulled off by [Cowart]?

A:    Yes.

Q:    Okay. And she said this happened when her mom was at the beach, correct?

A:    Yes.

Q:    And I guess [appellant] and [Cowart] got into a fight that day?

A:    Yes.

Q:    And that [Cowart] was pulling [appellant's] thumb and pulled real hard and [appellant's] thumb came off?

A:    Let me see if that's exactly what she said. Do you want me to read what I have about that?

Q:    Sure.

A:    Let's see. He grabbed, like, a knife and like, no, like [Cowart] was, like, he was pulling, pulling real, real hard until the stuff can come off. So can, not that a thumb came off.

Q:    So nothing about the thumb coming off, but it could come off or something?

A:    Yeah, that it was being pulled, that it was cut off, was bleeding, [Cowart's] nose was bleeding, that they were fighting, drinking, smoking, yeah.

The State argues the proffered testimony is inadmissible hearsay and does not qualify as an exception to hearsay under article 38.072 of the Texas Code of Criminal Procedure. We agree. Article 38.072 provides a statutory exception to statements that would generally be considered inadmissible hearsay. Tex. Code Crim. Proc. art. 38.072. Statements that describe the *alleged offense* will be

10

admissible. *See* Tex. Code Crim. Proc. art. 38.072 § 2(a)(1)(A) (emphasis added). Here, J.M.'s statements to Mullin describe an unrelated episode of violence that does not describe the alleged offense for which appellant was on trial. Appellant offers no other hearsay exception. Accordingly, the trial court did not err in excluding this proffered testimony.[2]

### 4. Testimony Regarding Appellant's Request for a Polygraph

Appellant argues the trial court erred by excluding testimony regarding statements he made during an interview with Officer Barnes, a Houston Police Department investigator. Appellant argues he should have been able to call Barnes as an adverse witness, thus making the statements admissible as a party opponent. *See* Tex. R. Evid. 801(e)(2). Appellant wished to introduce his offer to take a polygraph exam. Officer Barnes testified that child molesters are similar to con artists in that they can be very manipulative. By excluding appellant's statements to Officer Barnes, appellant argues the jury was precluded from determining whether he was being manipulative.

"Texas Rule of Evidence 801(e)(2) provides that a statement is not hearsay if it is offered *against* a party and is a party's own statement." *Williams v. State*, 402 S.W.3d 425, 438 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (emphasis added). "The only requirements for admissibility of an admission of a party opponent under Rule 801(e)(2)(A) is that the admission is the [opponent's] own statement and that it is offered against him." *Id.* (citing *Trevino v. State*, 991

---

[2] Defense counsel again tried to introduce this evidence during cross-examination of J.M. However, the trial court sustained the State's relevance objection before any testimony from J.M. could be elicited. Defense counsel made no offer of proof showing what J.M.'s testimony would have been. Consequently, this complaint has not been preserved for our review. *See* Tex. R. App. P. 33.1(a).

S.W.2d 849, 853 (Tex. Crim. App. 1999)). Because appellant sought to offer his own out-of-court statements, rather than his opponent's, the statements do not fit within the hearsay exception contained in Rule 801(e)(2).[3] Accordingly, the trial court did not err in excluding this testimony.

### 5. J.M.'s Prior Medical History

Appellant argues the trial court erred by excluding evidence that J.M. suffered extensive physical injuries as an infant, including possible rib fractures. The trial court found the evidence irrelevant. The State contends that appellant has waived this complaint because he failed to make an offer of proof as to the excluded testimony.

To preserve error on the ground that the trial court improperly excluded the testimony of a witness, a party must inform the trial court of the substance of the testimony by an offer of proof, unless the substance was apparent from the context. *See* Tex. R. Evid. 103(a)(2); Tex. R. App. P. 33.1(a). "[I]t is not enough to tell the judge that evidence is admissible. The proponent, if he is the losing party on appeal, must have told the judge *why* the evidence was admissible." *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) (emphasis added).

Here, appellant did not make an offer of proof, nor did appellant file a

---

[3] Moreover, evidence of a defendant's offer to take a polygraph graph test generally has been held inadmissible, as this evidence "is so unreliable and self-serving as to be devoid of probative value." *United States v. Bursten*, 560 F.2d 779. 785 (7th Cir. 1977); *see also United States v. Dinga*, 609 F.3d 904, 908 (7th Cir. 2010); *United States v. Harris*, 9 F.3d 493, 502 (6th Cir. 1993). In fact, "any reference to polygraph or lie detector tests is improper even when the test result is not disclosed." *Russell v. State*, 798 S.W.2d 632, 635 (Tex. App.—Fort Worth 1990, no pet.). The exclusion of a defendant's offer to take a lie detector test appears to be a question of first impression in Texas. However, considering the Texas Court of Criminal Appeals' general hostility towards evidence regarding lie detector tests, *see Nesbit v. State*, 227 S.W.3d 64, 66 n.4 (Tex. Crim. App. 2007); *Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990); *Castillo v. State*, 739 S.W.2d 280, 293 (Tex. Crim. App. 1987), we cannot say that the trial judge's decision fell outside the bounds of reasonable disagreement.

formal bill of exception pursuant to Texas Rule of Appellate Procedure 33.2. Tex. R. App. P. 33.2. However, during cross-examination of Wendy Nelson, a CPS caseworker, defense counsel tried to establish that J.M. had suffered extensive physical abuse as an infant. In response to the State's objection and outside the presence of the jury, defense counsel explained to the court that J.M. suffered extensive injuries as an infant, and that CPS was involved in her life from a very young age. While defense counsel did not make a formal offer of proof, it appears the substance of the testimony was apparent from the context. Thus, appellant's complaint is not waived.

Nevertheless, appellant's argument is overruled because we conclude the trial judge did not abuse her discretion in excluding testimony regarding J.M.'s prior medical history. The trial court's decision was within the bounds of reasonable disagreement. Texas Rule of Evidence 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is generally admissible. *See* Tex. R. Evid. 402; *Erazo v. State*, 144 S.W.3d 487, 499 (Tex. Crim. App. 2004). Irrelevant evidence is inadmissible. *See* Tex. R. Evid. 402. Here, whether J.M. suffered injuries as an infant does not make sexual assault by the appellant several years later more or less probable. Accordingly, appellant's argument regarding J.M.'s prior medical history is without merit.

## C. Arguments Not Preserved For Appeal

### 1. Appellant's DWI Conviction

Appellant contends the trial court erred in allowing the State to impeach him with his felony conviction for driving while intoxicated during cross-examination. Specifically, appellant argues allowing the State to impeach him with his

conviction was far more prejudicial than probative. Generally, a defendant who voluntarily testifies, thus waiving his privilege against self-incrimination, is subject to the same rules as any other witness. *See Bell v. State*, 620 S.W.2d 116, 124 (Tex. Crim. App. [Panel Op.] 1980) (op. on reh'g).[4]

Appellant was convicted of DWI in 1998. Under Rule 609 of the Texas Rules of Evidence, as discussed previously, evidence of a criminal conviction offered to attack a witness's character for truthfulness is admissible unless it falls in one of the few exceptions. Tex. R. Evid. 609. However, the probative value of the evidence must outweigh its prejudicial effect. *Id*. Furthermore, "if more than 10 years have passed since the witness's conviction or release from confinement for [the prior conviction], whichever is later," it is "admissible only if its probative value, supported by specific facts and circumstances, *substantially* outweighs its prejudicial effect." *Id*. (emphasis added).[5]

---

[4] We review a trial court's decision to admit a prior conviction for an abuse of discretion. *See Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992). We will not disturb the trial court's ruling on an evidentiary matter so long as it lies within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We are to give the trial court "wide discretion" when reviewing the trial court's determination to admit a defendant's prior conviction. *See Theus*, 845 S.W.2d at 881.

[5] The trial court stated, outside the presence of the jury, "[M]y understanding is that [appellant] was not released from parole on that [1998] conviction until 2010, putting us squarely within ten years from today. State, is that correct?" Appellant testified as follows:

Q: You were convicted for D.W.I. out of Liberty County?

A: Yes, sir.

Q: And you received, what is it, about a 12-year sentence for that?

A: 12-year sentence, yes, sir, done two on the 12. On parole for 10.

Appellant, therefore, was released on parole in 2000, more than 10 years before his testimony. We have found no Texas court that has definitively ruled on the question of whether "release from confinement" includes time on parole. Because we conclude that appellant waived his complaint, we need not reach that issue here.

Although the State questioned appellant briefly about the DWI in cross-examination, appellant discussed it first on direct examination in an apparent attempt to control its negative effect before the jury.

Generally, a complaint regarding improperly admitted evidence is waived if the same evidence is introduced by the defendant himself. *See Cisneros v. State*, 290 S.W.3d 457, 468 (Tex. App.—Houston [14th Dist.] 2009, pet. dism'd) (citing *Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993)). An exception to this general rule applies when the appellant brings in the evidence in an effort to meet, rebut, destroy, deny, or explain evidence that already has been improperly admitted. *See id*. However, this exception does not apply if the appellant testifies about his prior conviction on direct examination in an effort to preempt questions anticipated by the State during cross-examination. *Id.*; *see also Ohler v. United States,* 529 U.S. 753, 760 (2000) ("[A] defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error.").

Here, the record reflects that appellant testified about his prior conviction on direct examination before evidence of his prior conviction had been introduced by the State. By testifying first on direct examination, appellant waived any error regarding the trial court's ruling on the admissibility of his prior conviction.

## 2. Evidence of Jailhouse Informant's Prior Criminal History

Appellant contends the trial court erred when it precluded defense counsel from cross-examining jailhouse informant, William Floyd Kent, about his prior criminal history. While the trial court did permit counsel to attack Kent's credibility with his prior criminal convictions pursuant to Texas Rule of Evidence 609, counsel was not allowed to disclose any additional details about Kent's convictions. In his offer of proof, appellant presented testimony from Kent that he

pled "not guilty" to a charge of aggravated assault, that he had not written a letter of apology to the complainant in that case because he was not allowed to contact her, that he sought DNA testing, and that he also filed three writs challenging his conviction. Defense counsel argued that this evidence was relevant to rebut Kent's assertion during direct examination that he was testifying for the State because he wanted justice for J.M.

On appeal, appellant presents no legal argument why this testimony should have been included as evidence during trial. Instead, appellant states only that he "was precluded from questioning the witness on his extensive criminal history" and "was further precluded from asking any questions regarding any of the underlying facts in the aggravated sexual assault case . . . ." Appellant does not cite any legal authority or provide any argument as to why the evidentiary ruling was erroneous. "Conclusory statements which cite no authority present nothing for appellate review." *Nolan v. State*, 102 S.W.3d 231, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd); *see also* Tex. R. App. P. 38.1(i). Accordingly, we hold appellant has waived his complaint and overrule this issue.

### 3. Statements Made by J.M.'s Brother

Appellant argues the trial court erred by precluding testimony from Mullin concerning disclosures of abuse made by J.S. during his interview at the Children's Assessment Center. However, defense counsel did not inform the trial court of the substance of the testimony by an offer of proof and the substance is not apparent from the context. Therefore, any error has not been preserved. Accordingly, this complaint presents nothing for appellate review. *See* Tex. R. App. P. 33.1(a).

### 4. Contact Between J.M. and J.S.

During trial, defense counsel sought to elicit testimony from J.M. about an

incident where J.S. purportedly laid on top of her. The trial court excluded this line of questioning as irrelevant. Defense counsel did not make an offer of proof and the substance is not apparent from the context. Thus, any error has not been preserved and this complaint presents nothing for appellate review. *See* Tex. R. App. P. 33.1(a). Additionally, appellant does not cite any legal authority or provide any argument explaining why the proffered evidence should have been included at trial. "Conclusory statements which cite no authority present nothing for appellate review." *Nolan*, 102 S.W.3d at 236; *see also* Tex. R. App. P. 38.1(i). Accordingly, this complaint presents nothing for appellate review.

## 5. Evidence of Unspecified Contact Between J.M. and Other Men

During cross-examination of Dr. Marcella Donaruma, a child abuse pediatrician, defense counsel was precluded from questioning Dr. Donaruma about any "extraneous allegations and perpetrators" or other men involved in J.M.'s life, possibly known to Dr. Donaruma from the reports provided to her. Defense counsel argued the testimony was relevant to show that someone other than appellant could have caused J.M.'s anal scar. However, counsel did not provide any offer of proof and the substance of the testimony is not apparent from the context. Therefore, any error has not been preserved. *See* Tex. R. App. P. 33.1(a). Additionally, appellant does not cite any legal authority or provide any argument explaining why the proffered evidence should have been included at trial. Thus, appellant's complaint presents nothing for appellate review. *See* Tex. R. App. P. 38.1(i).

## 6. Previous Sexual Assault of J.M.

During the presentation of Cowart's testimony from a previous trial, defense counsel was precluded from offering evidence regarding the circumstances of a previous sexual assault of J.M. The testimony read as follows:

Q: Where did you see [J.M. and J.S.] at?

A: Usually when [J.M.'s mother] was coming to drop [J.S.] off so I could watch them.

Q: Fair enough.

A: And she would run the streets and stay gone. That's how [J.M.] got abused the first time.

Q: Okay. And she—

A: Because she—she left him with her boyfriend—

The trial court redacted the portion of testimony that reads, "[t]hat's how J.M. got abused the first time," finding it irrelevant. Appellant does not cite any legal authority or provide any argument explaining why the proffered evidence should have been included at trial. Thus, appellant's complaint presents nothing for appellate review. *See* Tex. R. App. P. 38.1(i).

### III. CONCLUSION

Finding no error, we affirm the judgment of the trial court.


/s/     Martha Hill Jamison
        Justice


Panel consists of Justices Jamison, McCally, and Donovan.
Publish — Tex. R. App. P. 47.2(b).