**Affirmed and Memorandum Opinion filed February 4, 2020.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00599-CR

## MICHAEL JOHN BURKLAND, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court at Law No. 2
Harris County, Texas
Trial Court Cause No. 2107369**

## M E M O R A N D U M   O P I N I O N

Appellant Michael John Burkland appeals his conviction for Class B misdemeanor driving while intoxicated. He raises seven issues, including four issues attacking the trial court's denial of his motion to suppress, one issue contending the trial court erroneously limited his cross-examination of a witness, and two issues asserting the trial court provided an erroneous charge to the jury. After careful consideration of appellant's issues and the record, we conclude that

none of his issues warrant reversal, and we therefore affirm the trial court's judgment.

## Background

Pasadena Police Department ("PPD") Officer Simone Riddle, parked in a marked patrol car at a closed gas station in a remote area of Pasadena at 2:00 a.m., saw a pick-up truck with three occupants pull into the parking lot. Appellant exited the driver's side, leaving the door open, and walked around the side of the gas station and out of Riddle's sight. Riddle backed her patrol vehicle near the parked truck. When appellant returned a moment later, Riddle concluded that appellant likely had urinated behind the building. She called appellant over to her and asked him if he had done what she thought he had done. Appellant approached Riddle and acknowledged that he had urinated behind the building. As appellant approached Riddle, she noticed that he staggered, spoke slowly and slurred his speech, had red and watery eyes, and smelled strongly of alcohol. Based on her observations, she suspected appellant was intoxicated and summoned a PPD driving while intoxicated ("DWI") unit.

DWI Officer Nicholas Slight arrived about ten minutes after Riddle called. Slight noticed that appellant smelled strongly of alcohol, had red bloodshot eyes, and was unsteady on his feet. Appellant told Slight he had four glasses of champagne between 5:00 and 10:00 p.m. and was "partially" intoxicated. Slight administered several field sobriety tests, including the horizontal gaze nystagmus ("HGN") test and the walk-and-turn test. Appellant displayed six out of six possible clues during the HGN test and five out of eight possible clues during the walk-and-turn test.

Slight concluded that appellant was intoxicated and arrested him. Slight read the DIC-24 statutory warnings to appellant, which provided appellant the

2

following notification at the time of his arrest:  "You will be asked to give a specimen of your breath and/or blood.  The specimen will be analyzed to determine the alcohol concentration or the presence of a controlled substance, drug, dangerous drug or other substance in your body."  After receiving these warnings, appellant consented to giving a blood sample.  Lab analysis indicated appellant had a blood-alcohol concentration ("BAC") of 0.17.

Appellant was charged by information with Class A misdemeanor DWI.  *See* Tex. Penal Code § 49.04(d) (DWI is Class A offense if the defendant's BAC was 0.15 or more at the time the analysis was performed).  A jury found him guilty of the lesser included offense of Class B misdemeanor DWI.  *See id.* § 49.04(b).  The trial court sentenced appellant pursuant to an agreement with the State to 180 days in jail, probated for one year.  Appellant timely noticed his appeal.

**Analysis**

**A.  Motion to Suppress**

Appellant's first four issues all concern his motion to suppress evidence. Appellant sought to suppress (1) all evidence because Officer Riddle illegally detained him, (2) his statements to Officer Slight because Officer Slight illegally interrogated him without *Miranda* warnings, (3) his blood test evidence because his blood specimen was subjected to chemical analysis without his consent or a warrant, and (4) his blood test evidence because the State did not comply with the Texas Transportation Code.

1.  *Standard of Review*

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review.  *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).  We review the trial court's factual findings for an abuse of discretion but

3

review the trial court's application of the law to the facts de novo. *Id.* Our deferential review of the trial court's factual determinations, *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010), also applies to the trial court's conclusions regarding mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review mixed questions of law and fact that do not turn on credibility and demeanor, as well as purely legal questions, de novo. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

The trial court is the sole trier of fact and judge of witness credibility and the weight to be given their testimony. *Valtierra*, 310 S.W.3d at 447. When the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports the fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). If the trial court fails to make a particular finding, we imply a fact finding to support the trial court's ruling when the evidence supports the implied finding. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014).

2. *Investigatory Detention*

In issue one, appellant contends he was illegally detained because Officer Riddle lacked reasonable suspicion that a crime had been or was being committed. We disagree.

4

Encounters between citizens and police officers may "run the gamut from 'wholly friendly exchanges of pleasantries' to 'hostile confrontations of armed men, involving arrests, injuries, or loss of life.'" *State v. Garcia-Cantu*, 253 S.W.3d 236, 242-43 (Tex. Crim. App. 2008) (quoting *Terry v. Ohio*, 391 U.S. 1, 13 (1968)).

> Police officers are as free as any other citizen to knock on someone's door and ask to talk with them, to approach citizens on the street or in their cars and to ask for information or their cooperation. Police officers may be as aggressive as the pushy Fuller-brush man at the front door, the insistent panhandler on the street, or the grimacing street-corner car-window squeegee man. All of these social interactions may involve embarrassment and inconvenience, but they do not involve official coercion. It is only when the police officer "engages in conduct which a reasonable man would view as threatening or offensive even if performed by another private citizen," does such an encounter become a seizure. It is the display of official authority and the implication that this authority cannot be ignored, avoided, or terminated, that results in a Fourth Amendment seizure.

*Id.* at 243 (quoting 4 Wayne R. LaFave, Search and Seizure § 9.4(a), at 427 (4th ed. 2004)).

In the present case, the trial court made the following findings concerning appellant's interactions with Officer Riddle:

> 6. Riddle approached Defendant to ask him what he was doing at a closed business in a desolate area at 2 a.m. Riddle was concerned that there might be a medical emergency; she was also aware of a risk of smash and grab burglaries in the area.
>
> 7. Riddle found it abnormal that Defendant pulled into the Valero station when it was obviously closed and that he left the door opened when he got out of the vehicle.
>
> 8. Defendant told Riddle that he had urinated behind the business.
>
> 9. Defendant was off-balance and swayed.
>
> 10. Defendant had red eyes.

5

11. Defendant had slurred speech.

12. Defendant smelled strongly of alcohol.

13. Based on Defendant's balance, swaying, slurred speech, red eyes, and the fact that Defendant smelled strongly of alcohol, Riddle believed that Defendant showed signs of intoxication.

(Record cites omitted). Based on these findings, the trial court concluded that the encounter between Officer Riddle and appellant, at least at the start, was consensual. We agree. Even if Officer Riddle was "pushy" and her question to appellant involved "embarrassment and inconvenience," nothing shows that she implied to appellant that her authority could not be ignored, avoided, or terminated. *See id.* For example, nothing in the record indicates that Officer Riddle used "an authoritative, commanding voice and demeanor that brooked no disagreement into [her] official investigation." *Id.* at 245-49. She did not shine a spotlight on appellant or approach and confront him with a large flashlight, shining it into his eyes. *See id.* Further, although Officer Riddle parked her patrol car somewhere behind appellant's truck, nothing in the record indicates that she "boxed" his truck in or otherwise blocked his exit. *See id.* Instead, appellant voluntarily approached Officer Riddle when she questioned him about what he had been doing. Viewing the evidence in the light most favorable to the trial court's ruling, we agree that the record supports the trial court's conclusion that this encounter was consensual. *See Valtierra*, 310 S.W.3d at 447.

The trial court further concluded that, once Officer Riddle observed appellant during their consensual encounter, she developed reasonable suspicion for further investigation into a possible DWI. Reasonable suspicion exists if the officer has specific, articulable facts that, combined with rational inferences from those facts, would lead the officer to reasonably conclude that the person is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d

6

737, 741 (Tex. Crim. App. 2007). Under this objective standard, courts disregard any subjective intent of the officer and look solely to whether an objective basis for the detention exists. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A reasonable-suspicion determination is made by considering the totality of the circumstances. *Curtis v. State*, 238 S.W.3d 376, 379 (Tex. Crim. App. 2007).

As appellant approached Officer Riddle, she developed specific, articulable facts that supported detention for further investigation. *See Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd) (explaining that reasonable suspicion for investigative detention may develop during initial encounter with police officer); *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref'd). For example, appellant admitted he had urinated behind a public building, Officer Riddle observed that appellant had difficulty balancing and was swaying, his eyes were red, and his speech was slurred, and Officer Riddle smelled a strong odor of alcohol emanating from his person. *E.g.*, *Kirsch v. State*, 306 S.W.3d 738, 748 (Tex. Crim. App. 2010) (discussing evidence that logically raises inference of intoxication, including swaying, slurred speech, "any and all of the usual indicia of intoxication"). These facts are more than sufficient to justify Officer Riddle's investigative detention of appellant for possible DWI.

Viewing the evidence in the light most favorable to the trial court's ruling, the trial court did not err in denying appellant's motion to suppress on the basis that Officer Riddle illegally detained him. We overrule appellant's first issue.

3.      *Custodial Interrogation*

In his second issue, appellant contends that Officer Riddle's encounter with appellant rose to the level of a custodial detention; thus, the inculpatory statements he later made to Officer Slight should be suppressed because he was not first given *Miranda* warnings.

7

An encounter between a police officer and a citizen "may escalate from a non-custodial detention into a custodial detention when formal arrest ensues or a detainee's freedom of movement is restrained to the degree associated with a formal arrest." *State v. Ortiz*, 382 S.w.3d 367, 372 (Tex. Crim. App. 2012). In making a custody determination, the primary question is whether a reasonable person would perceive the detention to be a restraint on his movement comparable to formal arrest, given all the objective circumstances. *Id.*

Appellant contends that he was "in custody" because Officer Riddle told him he was unfit to drive. In *Ortiz*, the Court of Criminal Appeals held that Ortiz was in custody when police questioned him because: (1) officers expressed their suspicion that Ortiz possessed drugs or knew that his wife was in possession of drugs; (2) Ortiz's detention had escalated beyond that of a routine traffic stop because at least two police cars and three officers were present when he made the statements; (3) officers handcuffed Ortiz when a pat-down revealed something illegal or dangerous on Ortiz's wife's person; and (4) after Ortiz was handcuffed, officers informed him that something illegal had been found on Ortiz's wife, implicitly signaling that Ortiz was now under detention for something more serious than a speeding infraction. *Id.* at 373-75. Here, in contrast, Officer Riddle simply stated to appellant that he was "unfit to drive." She did not indicate that appellant could not leave the scene (such as by walking away), she did not handcuff him or pat him down, and she was the only officer present at the scene when she made this statement. *See, e.g.*, *Estrada v. State*, No. PD-0106-13, 2014 WL 969221, at *5-6 (Tex. Crim. App. Mar. 12, 2014) (not designated for publication) (declining to hold the appellant was in custody when only a single incriminating question was asked of her; she was not handcuffed or subjected to a pat-down, only an "ordinary" number of officers were present during the detention, she was not told she could

8

not leave, and she was not individually interrogated).

For these reasons, we conclude that the trial court properly denied appellant's motion to suppress on the ground that he was in custody during his encounter with Officer Riddle. We overrule appellant's second issue.

4.     *Blood Specimen Evidence*

In his third issue, appellant contends that he did not consent to having his blood tested. In his related fourth issue, appellant asserts that the State did not prove it complied with Texas Transportation Code section 724.015, which requires that certain information be provided verbally and in writing before an officer requests that a defendant submit to taking a specimen. *See* Tex. Transp. Code § 724.015.

a.     Scope of Consent

The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). "[T]he standard for measuring the scope of consent under the Fourth Amendment is that of 'objective' reasonableness— what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Valtierra*, 310 S.W.3d at 448-49. In other words, courts review the totality of the circumstances of a particular police-citizen interaction from the point of view of the objectively reasonable person, without regard for the subjective thoughts or intents of either the officer or the citizen. *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011).

Appellant does not dispute that he consented to the blood draw; instead, he asserts that he did not consent to the later analysis of his blood. Officer Slight's signed DIC-24 statutory warning form was admitted into evidence. These warnings explicitly provided appellant with notice that his blood or breath specimen would be analyzed to determine its alcohol concentration. Officer Slight testified that appellant consented to the blood draw, which was to be used for analysis. Because appellant was informed of the purpose of the blood draw before he consented, we conclude that his consent covered both the draw and the subsequent analysis of his blood. *Cf. Valtierra*, 310 S.W.3d at 448-49; *see also Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (explaining that scope of consent is generally defined by its expressed object).

We overrule appellant's third issue.

### b. Statutory Warnings

The record contains no evidence that Officer Slight failed to give appellant his statutory warnings. Officer Slight testified that he always reads the DIC-24 warnings before requesting a sample, although he had no specific recollection of doing so in the present case. However, Officer Slight refreshed his memory by looking at his offense report, in which he indicated that he had given appellant the DIC-24 warnings. The trial court found that Officer Slight gave these warnings to everyone he arrested for DWI, including appellant, and further found Officer Slight to be credible. We must defer to that finding on appeal. *See Valtierra*, 310 S.W.3d at 447 ("The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. He is entitled to believe or disbelieve all or part of the witness's testimony—even if that testimony is uncontroverted—because he has the opportunity to observe the witness's demeanor and appearance.").

We overrule appellant's fourth issue.

## B. Impeachment of Officer Slight

In his fifth issue, appellant contends the trial court erred by sustaining the State's objection to permitting him to impeach Officer Slight with evidence of Officer Slight's overtime pay. During cross-examination of Officer Slight, appellant's counsel elicited the following testimony:

Q. Now your regular hours are from what hours to what hours?

A. 8:00 p.m. to 6:00 a.m.

\*\*\*

Q. Are you getting paid overtime right now?

A. Yes, sir.

Q. So when you call somebody to go to court, you actually get a financial benefit by going to court. You're getting overtime?

A. I get overtime if I am testifying.

Q. And the more arrests that you make, the more opportunity you have to come to court?

[The State]: Your Honor, objection to relevance.

The Court: Sustained

After the trial court sustained the State's objection, counsel approached, and defense counsel proffered that he intended to establish Officer Slight's motive to make arrests by discussing prior alleged abuse of overtime pay for testimony by Houston Police Department officers. Defense counsel also proffered that Officer Slight "would admit to making lots of money by coming to court." The trial court sustained the State's Rule 403[1] objection to any further testimony on the subject of overtime pay.

---

[1] Rule 403 provides that a court may exclude relevant evidence if its probative value is substantially outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403.

We review a trial court's evidentiary ruling for an abuse of discretion. *See Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *Zavala v. State*, 401 S.W.3d 171, 176 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). We will not disturb the ruling if it is within the zone of reasonable disagreement. *See Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007); *Roderick v. State*, 494 S.W.3d 868, 874 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Instead, we will uphold the ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); *Roderick*, 494 S.W.3d at 874.

As is evident from the above excerpt, the jury was provided evidence that Officer Slight received compensation for his time testifying in court in his capacity as a police officer, irrespective of whether his testimony benefitted either side. The trial court prevented appellant from eliciting through further cross-examination of Officer Slight that other officers in other cases from other police departments may have abused the overtime pay system. Information was already before the jury from which it could have concluded, if it chose to, that Officer Slight's testimony concerning appellant's arrest was unreliable because of Officer Slight's supposed financial interest. *See Castillo v. State*, 939 S.W.2d 754, 759-60 (Tex. App.— Houston [14th Dist.] 1997, pet. ref'd) (concluding trial court did not abuse its discretion in refusing to permit counsel to delve further into officer's aggregate overtime pay in effort to establish officer's motive to testify falsely).

Because the court's decision to exclude this evidence falls within the zone of reasonable disagreement, we overrule appellant's fifth issue.

## C.    Jury Charge

Appellant raises charge complaint grounds in his sixth and seventh issues. He first contends that the trial court erred by denying his requested article 38.23

instruction on the admissibility of his blood test results. He then asserts that the trial court erred by providing the jury the full statutory definition of "intoxication" when only limited portions of the definition were raised by the evidence.

### 1. *Standard of Review*

We evaluate claims of charge error using a two-step process, considering first whether error exists. *See Navarro v. State*, 469 S.W.3d 687, 698 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). If we determine charge error occurred, we then analyze that error for harm. *Id.* (citing *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984)).

### 2. *Article 38.23 Instruction*

Article 38.23(a) states:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. art. 38.23(a). To be entitled to an article 38.23 instruction, a defendant must establish that (1) the evidence heard by the jury raises an issue of fact, (2) the evidence on that fact must be *affirmatively contested*, and (3) the contested fact issue must be material to the lawfulness of the charged conduct. *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008). The factual

13

dispute must be raised by affirmative evidence, not only through cross-examination or argument. *Id.*

Here, appellant requested an article 38.23 instruction based on Officer Slight's testimony concerning whether he provided appellant the required statutory warnings pursuant to the Transportation Code. Although Officer Slight could not independently recall giving these warnings to appellant, he refreshed his recollection using the offense report, which noted that he provided the warnings to appellant. Thus, as explained above, there is no affirmative evidence that Officer Slight failed to give appellant the requisite statutory warnings. *See, e.g.*, *Garza v. State*, 126 S.W.3d 79, 87 (Tex. Crim. App. 2004). Accordingly, appellant was not entitled to an article 38.23 instruction, and the trial court did not err by refusing to provide it.

We overrule appellant's sixth issue.[2]

3.    *Intoxication Instructions*

Turning to appellant's complaint that the trial judge incorrectly instructed the jury on inapplicable definitions of intoxication. The legislature has adopted a broad definition of "intoxicated" that focuses on whether a person is intoxicated and not the agent that caused it. Tex. Penal Code § 49.01(2)(A); *Ouellette*, 353 S.W.3d at 869-70. The statutory definition reads:

> (2) "Intoxicated" means:
>
> (A) not having the normal use of mental or physical faculties by reason of the introduction of **alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body**; or

---

[2] Moreover, the jury found appellant guilty of Class B misdemeanor DWI, not the Class A offense with which he was charged. Thus, the jury necessarily disregarded the blood test results showing appellant had a BAC of 0.15 or higher.

(B) having an alcohol concentration of 0.08 or more.

Tex. Penal Code § 49.01(2) (emphasis added).

Here, the charge provided in pertinent part:

"Intoxicated" means not having the normal use of one's mental or physical faculties by reason of the introduction of **alcohol into the body or by having an alcohol concentration of 0.08 or more**.

"Alcohol concentrating" means the number of grams of alcohol per 100 milliliters of blood, 210 liters of breath, or 67 milliliters of urine.

(Emphasis added). The application paragraph also referenced breath and urine concentrations, in addition to BAC. Appellant contends this is charge error warranting a new trial. He relies on *Burnett v. State*, 488 S.W.3d 913 (Tex. App.—Eastland 2016), *aff'd*, 541 S.W.3d 77 (Tex. Crim. App. 2017).

In *Burnett*, the Court of Criminal Appeals held that it was error to provide a jury instruction containing the full statutory definition of "intoxication," including that it may be caused by sources other than alcohol, when the only evidence supported intoxication by alcohol. *Burnett*, 541 S.W.3d at 83-84. There, pills were found in appellant's vehicle and his jacket pocket. *Id.* at 79. However, there was no evidence that Burnett was intoxicated from any substance other than alcohol. *Id.* at 84. In the absence of any such evidence, the trial court erred in instructing the jury on intoxication by drug consumption. *Id.* at 85. That particular issue is not raised here, given that the present jury charge instruction limited the source of appellant's intoxication to alcohol. Thus, *Burnett* is not applicable to the facts of this case.[3]

---

[3] The State emphasizes that the jury necessarily disregarded any specimen-based evidence because it found appellant guilty only of the lesser-included offense of Class B DWI. Thus, the State insists that even if the charge were erroneous, appellant was not harmed. Notably, in *Burnett*, pills were found in the appellant's vehicle and his jacket, facts not present here. *Burnett*, 541 S.W.3d at 78

We overrule appellant's seventh issue.

## Conclusion

Having overruled each of appellant's issues, we affirm the trial court's judgment.


/s/    Kevin Jewell
          Justice


Panel consists of Justices Wise, Jewell, and Poissant.

Do Not Publish — Tex. R. App. P. 47.2(b).