**Opinion filed July 22, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00236-CR

_____

## JOERIC FRANCISCO DORITY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR52302**

## O P I N I O N

Appellant, Joeric Francisco Dority, was indicted for the felony offense of aggravated sexual assault of a child under six years of age. *See* TEX. PENAL CODE ANN. § 22.021(a), (f)(1) (West 2019). The indictment alleged that Appellant intentionally and knowingly caused the contact and penetration of the female sexual organ of T.R. by the sexual organ of Appellant and that T.R. was a child younger than six years of age. *See id.*

A trial occurred in June 2019 and ended with a mistrial. Appellant was retried and the jury convicted him as charged in the indictment. The jury assessed

Appellant's punishment at confinement for twenty-five years in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced Appellant accordingly. We modify and affirm.

Appellant asserts four issues on appeal. First, he contends that the trial court erred in excluding testimony about Troy Dority's prior bad acts, thereby infringing on Appellant's constitutional right to present a defense. Second, he argues that the State failed to prove beyond a reasonable doubt that T.R. was under the age of six at the time of the offense, and that the evidence was insufficient to support Appellant's conviction of this offense. Third, he contends that the trial court erred in allowing Leanna R. to serve as the outcry witness. Lastly, Appellant argues that it was error for the district clerk to add court-appointed attorney's fees, expert fees, and court reporter's fees against Appellant in the bill of costs.

*Background Facts*

Appellant and his niece, T.R., resided in the same home at the time of the alleged incident. T.R. and Appellant had a good familial relationship, but that changed when Appellant allegedly sexually assaulted T.R. prior to moving out in April of 2016.

T.R. testified that Appellant called her into his room and told her to take her clothes off and to climb onto the bed. T.R. stated that Appellant removed his pants and "put his private in [hers]." T.R. was in physical pain and felt "bad" and "embarrassed."

T.R. testified that, although she was around her two "mothers," Holli and Leanna R., immediately following the incident, she did not tell either of them what happened at that time. The date of the incident is unclear, and T.R. gave contradictory testimony regarding her age at the time of the incident.

In June of 2017, while staying at her grandparents' home, T.R. claimed to have told her grandmother what Appellant did to her. The next day, when Leanna

was picking her up, T.R.'s grandmother had T.R. tell Leanna about Appellant's inappropriate sexual contact. Later that evening, T.R. also told Holli what had happened, stating that Appellant instructed her to take her clothes off and that Appellant had touched her "no no" area. Child Protective Services was informed after Leanna met with a doctor, and T.R. underwent a Sexual Assault Nurse Examiner's exam at the Children's Advocacy Center on July 18, 2017.

Dana Taylor, the Sexual Assault Nurse Examiner who evaluated T.R., testified that T.R. was calm, cooperative, and talkative during the exam. The exam revealed a healed cut, beginning in the posterior fourchette and ending in the fossa navicularis, indicating penetration. T.R., in speaking with Taylor, reiterated the same version of events that she had described to Leanna, Holli, and her grandmother. T.R. stated during the exam that the assault occurred when she was four years old. The exam findings were that T.R. had been sexually assaulted.

T.R. and Paula, who is T.R.'s biological mother and Appellant's sister, moved into the family home when T.R. was about three months old. Appellant testified that his brother, Troy Dority, lived in the same home on occasion. Appellant stated that he and Troy were approximately the same size, wore similar clothes, and looked similar in some ways. Although Troy did not continually live in the same home as T.R., he was allegedly present and had access to T.R. while she was growing up. Appellant claims to have treated T.R. like a sister, and he denied any allegation of inappropriate conduct.

Dr. Perry Marchioni, a licensed psychologist and expert witness for Appellant, testified as to a child's ability to recall and describe events. Dr. Marchioni stated that a child's ability to discuss events that occur at the age of three and four years old is limited by their verbal capabilities. According to Dr. Marchioni's testimony, when a child who is age four or five is describing an event that took place at the age of three, "a lot of the information that they are sharing has been prompted where

3

they have been assisted in how to give the narrative [by an adult]." Dr. Marchioni also stated that it is possible for a young child, when recounting a traumatic event, to confuse two individuals who look similar.

We first address Appellant's second issue as it involves and overlaps into the evidence relevant to Appellant's further issues.

*Issue Two*

In his second issue, Appellant contends that the evidence presented in this case was insufficient to support his conviction for aggravated assault of a child under the age of six. Specifically, Appellant argues that the evidence does not prove that T.R. was under the age of six at the time of the alleged offense.

*Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded.

4

*Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

*Analysis*

As relevant to this case, a person commits the first-degree felony offense of aggravated sexual assault of a child if he intentionally or knowingly "causes the penetration of the anus or sexual organ of a child by any means" or "causes the sexual organ of a child to contact" the sexual organ of another person and if the victim is younger than fourteen years of age. PENAL § 22.021(a)(1)(B)(i), (a)(1)(B)(iii), (a)(2)(B). If the victim "is younger than six years of age at the time the offense is committed," then the "minimum term of imprisonment . . . is increased to 25 years." *Id.* § 22.021(f)(1).

The indictment charged Appellant with intentionally and knowingly causing contact and penetration of the female sexual organ of a child younger than six years of age with Appellant's sexual organ. *See* PENAL § 22.021(a)(1)(B)(i), (a)(1)(B)(iii), (a)(2)(B), (f)(1). The jury convicted Appellant of the offense as alleged in the indictment. Thus, the jury did not determine the exact age of T.R. at the time that the sexual assault occurred, other than to determine that T.R. was younger than six as specified in Section 22.021(f)(1). *See Bledsoe v. State*, 479 S.W.3d 491, 497–98 (Tex. App.—Fort Worth 2015, pet. ref'd). The indictment alleged that the offense

5

occurred on or about the 1st day of November, 2015. However, the evidence offered at trial does not clearly establish specifically when the sexual assault occurred, nor does it clearly establish T.R.'s exact age at the time of the assault.

T.R. was born in February 2011. T.R. made her outcry of sexual abuse to Leanna on Father's Day weekend in June of 2017, four months after her sixth birthday. However, the jury was entitled to believe that the date of the sexual assault was prior to her sixth birthday based on the testimony and evidence presented at trial. *See Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899.

Appellant asserts that the evidence was insufficient to support the jury's verdict that the offense occurred against a child younger than six years of age because T.R. could not remember how old she was when the offense occurred. T.R. gave conflicting testimony, stating that the offense happened prior to Appellant moving out of the home but also that it may have happened after he moved out. T.R. testified that she thought she was six years old when it happened and that she turned six while in kindergarten, but she contradicted this testimony by stating that this may have occurred after kindergarten. Appellant asserts that no rational jury could have determined the child's age based on this conflicting evidence.

We believe that, based on the testimony of both T.R. and Leanna, the jury could have reasonably concluded that T.R. was under the age of six at the time the offense occurred. T.R. testified that she was living in "the big house" when she was assaulted. Leanna testified that Appellant moved out of "the big house" in April of 2016, meaning that T.R. was no older than five years old when Appellant assaulted her. The jury is entitled to consider the tender age of the child and the trauma of testifying in the courtroom when considering the quality of T.R.'s testimony. *See Martinez v. State*, 178 S.W.3d 806, 810–11 (Tex. Crim. App. 2005) (discussing the policy behind Article 38.072 of the Texas Code of Criminal Procedure). The jury was entitled to believe this testimony, resolving conflicts in the testimony as the sole

6

judge of the witnesses' credibility and the weight their testimony was to be afforded. *See Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. Accordingly, we overrule Appellant's second issue.

## *Issue One*

Having first ruled upon Appellant's second issue, we now address his remaining issues. In his first issue, Appellant asserts that the trial court erred in excluding testimony concerning Troy Dority's prior bad acts. Specifically, Appellant argues that the exclusion of testimony regarding Troy's sexual assault of Appellant deprived Appellant of his constitutional right to present a defense.

## *Standard of Review*

As a prerequisite to presenting a complaint for appellate review, the record must show that a complaint was made to the trial court by an objection that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a)(1)(A). The trial court must have "(A) ruled on the request, objection, or motion, either expressly or implicitly; or (B) refused to rule on the request, objection or motion, and the complaining party objected to the refusal." *Id.* R. 33.1(a)(2).

The rationale for preservation being a prerequisite to further analysis is the same as that which supports preservation of error generally: a trial court should not be reversed on a matter that was not brought to the trial court's attention. *Carranza v. State*, 960 S.W.2d 76, 79 (Tex. Crim. App. 1998). "Arguments which are not supported by a trial objection are deemed overruled." *Burks v. State*, 876 S.W.2d 877, 899 (Tex. Crim. App. 1994). We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App.

7

2010).  We will not reverse a trial court's decision to admit or exclude evidence, and there is no abuse of discretion, unless that decision lies outside the zone of reasonable disagreement.  *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009); *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).  Furthermore, we will uphold a trial court's evidentiary ruling if it is correct on any theory of law that finds support in the record and is applicable to the case.  *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016); *Gonzalez v. State*, 195 S.W.3d 114, 125–26 (Tex. Crim. App. 2006); *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.—Eastland 2015, no pet.).

Furthermore, "[e]rroneous evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense." *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002) (alteration in original) (quoting *Potier v. State*, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002)).  There are two distinct scenarios in which rulings excluding evidence might rise to the level of a constitutional violation: (1) a state evidentiary rule that categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence vital to his defense and (2) a trial court's clearly erroneous ruling excluding otherwise relevant, reliable evidence that "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense."  *Id.* (quoting *Potier*, 68 S.W.3d at 665).  Evidence that an "alternative perpetrator" committed the charged offense falls into the second category.  *See id.* at 405–06.  "In weighing probative value against Rule 403 counterfactors, courts must be sensitive to the special problems presented by 'alternative perpetrator' evidence."  *Id.* at 406; *see* TEX. R. EVID. 403.  "Although a defendant obviously has a right to attempt to establish his innocence by showing that someone else committed the crime, he still must show that his proffered evidence regarding the alleged alternative perpetrator is sufficient,

8

on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged 'alternative perpetrator.'" *Wiley*, 74 S.W.3d at 406.

"Although it is unclear exactly how much evidence is necessary to sufficiently prove a nexus between the offense and allegedly guilty third party, Texas jurisprudence is clear that evidence of third party guilt is inadmissible if it is mere speculation that another person may have committed the offense." *Roderick v. State*, 494 S.W.3d 868, 875 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (quoting *Dickson v. State*, 246 S.W.3d 733, 739 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd)). "In order for a court to conclude there is a nexus between an alleged alternative perpetrator and the offense-at-issue; there must be something more than evidence that a person other than the criminal defendant was committing similar crimes around the time of the offense-at-issue[;] the evidence must connect the alleged alternative perpetrator to the specific offense." *Caldwell v. State*, 356 S.W.3d 42, 47 (Tex. App.—Texarkana 2011, no pet.) (quoting *Dickson*, 246 S.W.3d at 741).

Moreover, the admission of alternative-perpetrator evidence is subject to the Rule 403 balancing test, according to which the trial court must weigh its probative value against its tendency to confuse issues or mislead the jury, among other potential harms. *See* TEX. R. EVID. 403; *Wiley*, 74 S.W.3d at 406–07; *Roderick*, 494 S.W.3d at 875. Excluding such evidence is not constitutional error unless the evidence "goes to the heart of the defense." *Wiley*, 74 S.W.3d at 405.

*Analysis*

In the first trial, testimony was elicited concerning Troy's sexual assault of Appellant when they were children. Troy attended rehab after the incident, returned home, and was later incarcerated for reoffending.

In closing argument of the first trial, Appellant's defense counsel asserted that Troy was the one who sexually assaulted T.R. and that he had a propensity for sexual assault. Accordingly, the State filed "State's Amended Motion In Limine" prior to the retrial in this case requesting the exclusion of any mention of the prior bad acts of Troy. The motion requested that Appellant be prevented from presenting any evidence of Troy's past sexual assault of Appellant or other bad acts. Prior to any testimony in the retrial, Appellant's trial counsel requested a ruling on the State's motion, and the trial court conducted a hearing outside the jury's presence. After Appellant's trial counsel detailed the evidence presented during the first trial, the trial court responded by stating: "Y'all be back here at ten minutes 'til 1:00, I'll let you know then." After the scheduled recess ended, the trial proceeded with no mention of or ruling on the motion.

Later during the trial, the State requested a ruling from the trial court regarding the motion and any evidence of Troy's prior bad acts. Appellant's trial counsel responded to the State's inquiry by saying: "[W]e have no intent to get into any history. We'll talk about who Troy is as regards his brother, but we're not going to get into any history of [Appellant's] brother being a registered sex offender or having assaulted [Appellant] or anything like that." The trial court granted the State's motion, and Appellant's counsel did not object.

We find it important, for practical purposes, to determine whether the State's objection to the evidence of Troy's past conduct was actually a motion in limine, as stated and referred to on the record by the parties and trial court, or a motion to exclude evidence. *See* TEX. R. EVID. 103(b). Regardless of the *label* used by the trial judge and the parties, we look to the substance of the objection or motion to determine its effect. *Hernandez v. State*, 767 S.W.2d 902, 904 (Tex. App.—Corpus Christi–Edinburg 1989), *aff'd*, 800 S.W.2d 523 (Tex. Crim. App. 1990).

A true motion in limine is a request that the opposing party not be permitted to mention evidence, as specified in the motion, to the jury until a hearing has been held outside the presence of the jury to determine the admissibility of the evidence. *Geuder v. State*, 115 S.W.3d 11, 14 (Tex. Crim. App. 2003). "A true motion in limine does not usually seek an immediate ruling from the trial court." *Rawlings v. State*, 874 S.W.2d 740, 743 (Tex. App.—Fort Worth 1994, no pet.). "Rather, it seeks a ruling from the court ordering the holding of a hearing outside the jury's presence before any mention is made of the evidence." *Id.* (citing *Nunfio v. State*, 808 S.W.2d 482, 484 n.1 (Tex. Crim. App. 1991)). A trial judge's grant or denial of a motion in limine is a preliminary ruling only, and an objection thereto normally preserves nothing for appellate review. *Geuder*, 115 S.W.3d at 14–15. A ruling on a motion in limine is merely preliminary because, in most cases, a trial judge is not in a position to rule on the admissibility of evidence before trial begins. *Gonzales v. State*, 685 S.W.2d 47, 51 (Tex. Crim. App. 1985); *Carlisle v. State*, 818 S.W.2d 156, 158 (Tex. App.—Houston [1st Dist.] 1991, no pet.); *Hernandez*, 767 S.W.2d at 904.

In discussing the proper, practical purpose of a motion in limine, the Court of Criminal Appeals stated in *Norman v. State*:

> The purpose of a motion in limine is to prevent particular matters from coming before the jury. It is, in practice, a method of raising objection to an area of inquiry prior to the matter reaching the ears of the jury through a posed question, jury argument, or other means. As such, it is wider in scope than the sustaining of an objection made after the objectionable matter has been expressed. However, it is also, by its nature, subject to reconsideration by the court throughout the course of the trial. This is because it may not be enforced to exclude properly admissible evidence.

523 S.W.2d 669, 671 (Tex. Crim. App. 1975).

A motion in limine is generally broad in scope, rather than specific. *Rawlings*, 874 S.W.2d at 743. "This type of motion seeks no definitive, final ruling on the admissibility of specific evidence." *Id.* (citing *Nunfio*, 808 S.W.2d at 483–84, 484

11

n.1 (specific ruling on specific question that was narrower than subject matter of State's motion in limine preserved complaint for review); *Hart v. State*, 818 S.W.2d 430, 435 (Tex. App.—Corpus Christi–Edinburg 1991, no pet.) (motion to exclude specific, illegally seized evidence is motion to suppress); *Hernandez*, 767 S.W.2d at 903–04 (request to exclude specific reputation testimony from certain witnesses is not a motion in limine)).

Accordingly, if Appellant objected merely to what was truly the State's motion in limine, then there was no preservation of error. Appellant would have been required to tender the evidence in court and obtain a ruling that excluded the evidence before error would be properly preserved. *See* TEX. R. APP. P. 33.1. For that reason, reference to a motion to exclude (or suppress) as a "motion in limine" is a practice fraught with potential legal peril that may lull parties and courts into a misunderstanding about what is required to preserve error for appeal. After examining the record and the case law on this issue, we conclude that the State's motion to exclude Troy's past conduct was more akin to a motion to exclude rather than a motion in limine.

The State's request—made outside the presence of the jury immediately before Appellant testified—sought a definitive final ruling on a timely and specific motion to exclude evidence. *See Geuder*, 115 S.W.3d at 15 (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) (stating that "[w]hen the court, out of the jury's presence, hears and overrules objections to evidence, those objections need not again be made before the jury when the evidence actually is presented to the jury")). The ultimate and determinative issue is whether the trial court's ruling is "definitive [and] final," according to the court in *Geuder*. *See id.* at 15.

What was initially styled as a motion in limine was not ruled on prior to trial. In the midst of the presentation of Appellant's defense during trial, Appellant was

on the brink of affirmatively introducing specific evidence of Troy as an alternate perpetrator, and at that point, functionally, the State was asserting a motion to exclude. Therefore, we are of the opinion that the State's motion on this particular issue, although entitled "State's Amended Motion in Limine," was, in fact, not a motion in limine but, rather, a motion to exclude.

The State asserts that Appellant waived his right to assert this issue on appeal by informing the trial judge that he had "no intent" to go into Troy's history as a registered sex offender and his prior assault of Appellant.

To complain on appeal about the trial court's exclusion of evidence, the proponent "must have told the judge why the evidence was admissible" and must have brought to the trial court's attention the same complaint that is being made on appeal. *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) (discussing TEX. R. APP. P. 33.1). Appellant does not provide, nor can we find, any record of Appellant's objections to the trial court's granting of the amended motion during trial excluding evidence of Troy's past misconduct. Additionally, Appellant did not object or advise the trial court that Appellant's constitutional right to present a complete defense had been violated, nor did he object at any time during trial that the trial court's rulings deprived him of his constitutional right to present a complete defense. *See* TEX. R. APP. P. 33.1.

Appellant announced to the trial court, prior to any ruling, that he had decided to forgo presentation of this evidence. Appellant intentionally chose to abandon his prior trial strategy of attempting to introduce evidence of Troy's prior bad acts. Because Appellant did not pursue his argument at trial and chose to forgo any attempt at eliciting this line of testimony before the jury, Appellant did not preserve the issue for our review. *See, e.g.*, *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) (recognizing that deprivation of a meaningful opportunity to present a complete defense is a right subject to forfeiture).

13

The State also contends that, even if Appellant properly preserved this issue for appellate review, the trial court did not abuse its discretion in granting the State's amended motion. The State cites *Figueroa v. State* for the proposition that in order for a defendant to properly present an "alternative perpetrator" defense, there must be a "nexus" or connection between the charged offenses and the alleged alternative perpetrator. No. 05-15-00387-CR, 2017 WL 2289031, at *1 (Tex. App.—Dallas May 25, 2017, no pet.) (mem. op., not designated for publication).

In *Figueroa*, the trial court held, and the court of appeals affirmed that, although there was evidence that another individual was also sexually abusing E.E. at the same time as Figueroa, there was no evidence connecting the alleged alternative perpetrator to the abuse Figueroa allegedly committed. *Figueroa*, 2017 WL 2289031, at *3. Because there was no evidence connecting the alternative perpetrator to the offenses with which Figueroa was charged, the evidence regarding abuse by another individual was not sufficient to show a nexus between the crime charged and the alleged alternative perpetrator. *Id.* (citing *Wiley*, 74 S.W.3d at 405–06).

Furthermore, the court in *Figueroa* held that the proffered evidence would not survive the balancing test under Rule 403 even if it was found to be relevant. *Id.* (citing *Wiley*, 74 S.W.3d at 407). The probative value of the testimony was considered slight because of its highly speculative nature. *Figueroa*, 2017 WL 2289031, at *3. The court held that the testimony did, however, present a great threat of "confusion of the issues" because it would have forced the State to disprove nebulous allegations, thereby creating a "side trial" that could lead the jury astray, turning the focus away from whether Figueroa—the only person whose actions were on trial—abused E.E. *Id.* The evidence also presented a threat of "unfair prejudice," as it would invite the jury to blame an absent, unavailable, unrepresented person for the sexual abuse for which Figueroa was charged. *Id.* "Such speculative blaming

14

intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice." *Id.* (quoting *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998)).

Similarly, here, evidence that Troy sexually assaulted Appellant would have had no relevance or bearing on the issue of whether Appellant sexually assaulted T.R. The evidence does not tend to prove or disprove whether Appellant is guilty of the crime. Furthermore, even if this evidence had some relevance, as seen in *Figueroa*, the evidence would not survive the Rule 403 balancing test as the low probative value is severely outweighed by the danger of confusing the issues and unfair prejudice as seen above. *Figueroa*, 2017 WL 2289031, at *3. Therefore, the trial court did not abuse its discretion in denying the admission of this evidence.

We overrule Appellant's first issue.

*Issue Three*

In his third issue, Appellant asserts that the trial court erred in allowing Leanna to serve as the outcry witness.

*Standard of Review*

We review a trial court's ruling on admissibility of evidence for an abuse of discretion. *Martinez*, 327 S.W.3d at 736; *Coble*, 330 S.W.3d at 272. We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We will uphold a trial court's evidentiary ruling on appeal if it is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 125–26 (Tex. Crim. App. 2006); *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.—Eastland 2015, no pet.).

*Analysis*

Appellant asserts that the trial court erred by allowing Leanna to serve as the outcry witness in this case. An "outcry statement" under Article 38.072 of the Texas

Code of Criminal Procedure is a statutory exception to the hearsay rule in prosecutions for sex-related offenses committed against a child younger than fourteen years of age. CRIM. PROC. art. 38.072 (West Supp. 2020).

> Because it is often traumatic for children to testify in a courtroom setting, especially about sexual offenses committed against them, the Legislature enacted Article 38.072 to admit the testimony of the first adult a child confides in regarding the abuse. This witness may recite the child's out-of-court statements concerning the offense, and that testimony is substantive evidence of the crime.

*Martinez v. State*, 178 S.W.3d 806, 810–11 (Tex. Crim. App. 2005) (footnote omitted). Article 38.072 provides that outcry testimony from the first person, eighteen years of age or older, other than the defendant, to whom the child makes a statement describing the alleged offense will not be inadmissible because of hearsay, subject to certain procedural requirements. CRIM. PROC. art. 38.072, § 2(a)–(b).

The outcry exception applies "only to statements that . . . describe . . . the alleged offense." *Id.* § 2(a)(1)(A). The statement "must be more than words [that] give a general allusion that something in the area of child abuse was going on." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990); *see Michell v. State*, 381 S.W.3d 554, 558 (Tex. App.—Eastland 2012, no pet.). To be admissible, the statement must describe the offense in some discernible manner. *Garcia*, 792 S.W.2d at 91; *Michell*, 381 S.W.3d at 558.

For the outcry exception to apply, Article 38.072 requires that (1) on or before the fourteenth day before proceedings begin, the party intending to offer the statement (a) notifies the adverse party of its intent to offer the outcry statement, (b) provides the name of the outcry witness through whom it intends to offer the statement, and (c) provides a written summary of the statement; (2) the trial court holds a hearing outside the presence of the jury to determine whether the statement is reliable; and (3) the child testifies or is available to testify at the proceeding. *See* CRIM. PROC. art 38.072, § 2(b).

16

Prior to trial, the State designated Leanna as an outcry witness. However, Appellant asserts that T.R. first told her grandmother "Mimi" (Cara) about the sexual assault. Therefore, Appellant contends that it was error for the trial court to allow Leanna to serve as the outcry witness. We disagree.

In accordance with Article 38.072, the trial court conducted a hearing outside the presence of the jury to determine whether Leanna was authorized to testify regarding T.R.'s outcry. *See* CRIM. PROC. art 38.072, § 2(a)(2). T.R. testified that she told "Mimi and Pops" what Appellant did to her. Cara testified that she did not remember what T.R. told her, and Leon testified that T.R. never told him what happened. On the other hand, Leanna testified that T.R. told her that Appellant had called T.R. into his room and "touched his no-no area to her no-no area." Later, in the presence of Holli, T.R. described Appellant's "no-no area" as "round like a baseball bat and long." The trial court ruled that Leanna was the proper outcry witness.

The Austin Court of Appeals has held that an outcry witness is the first person who can *remember* and *relate at trial* the child's statement that in some discernible manner describes the alleged offense. *See Foreman v. State*, 995 S.W.2d 854, 859 (Tex. App.—Austin 1999, pet. ref'd); *see also Molina v. State*, 971 S.W.2d 676, 683 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). Based on the testimony during the outcry hearing, the trial court could reasonably have determined that T.R.'s grandmother and grandfather were not told of the incident, did not recall the outcry, or were never told any statement by T.R. in some discernible manner that they recognized as describing a sexual offense. In any of these possible scenarios, the trial court could have properly found that T.R.'s grandparents would not qualify as the "first person" under Article 38.072 since neither of them could *remember or relate at trial* T.R.'s outcry.

17

The Court of Criminal Appeals laid the foundation for the holding in *Foreman* in *Garcia v. State*, 792 S.W.2d 88 (Tex. Crim. App. 1990). When interpreting the "first person" portion of Article 38.072, the court stated:

> This Court interprets the ["first person"] portion of the statute to mean that the outcry witness must be the first person, 18 years old or older, to whom the child makes a statement that in some discernible manner describes the alleged offense. We believe that the statement must be more than words which give a general allusion that something in the area of child abuse was going on. In picking the particular wording of the "first person" requirement, the legislature was obviously striking a balance between the general prohibition against hearsay and the specific societal desire to curb the sexual abuse of children. *See generally Osborne v. Ohio*, 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990). That balance is the focal point of our analysis. The portion of the statute catering to the hearsay prohibition demands that only the "first person" is allowed to testify. But the societal interest in curbing child abuse would hardly be served if all that "first person" had to testify to was a general allegation from the child that something in the area of child abuse was going on at home. Thus, we decline to read the statute as meaning that any statement that arguably relates to what later evolves into an allegation of child abuse against a particular person will satisfy the requisites of Sec. 2(a)(2). The statute demands more than a general allusion of sexual abuse.
>
> . . . .
>
> . . . . In order to be designated as the outcry witness by the trial court, one element that must be clearly shown by the evidence is that the victim described the offense to that witness.

*Garcia*, 792 S.W.2d at 91 (footnote omitted).

"On the same basis, the societal interest in curbing child abuse would not be served if we interpreted the statute to require that the statutory 'first person' could only be the person to whom the child made an outcry even though that person did not hear, did not remember, or did not understand what the child was saying." *Foreman*, 995 S.W.2d at 859. We agree with the Austin Court of Appeals that the statutory "first person" refers to the first adult who can remember and relate at trial

the child's statement that in some discernible manner describes the alleged offense. Accordingly, we hold that the trial court did not abuse its discretion in determining that Leanna was the proper outcry witness. Appellant's third issue is overruled.

*Issue Four*

In his fourth issue, Appellant contends that it was error for the district clerk to require him to pay court-appointed attorney's fees, expert witness fees, and fees associated with the filing of the reporter's record. Appellant asserts that it was improper to assess these fees against him because he remains indigent. We agree.

*Standard of Review*

An indigent defendant cannot be taxed the cost of his or her court-appointed lawyer unless the trial court finds that the defendant has the financial resources to repay those costs in whole or in part. CRIM. PROC. art. 26.05(g); *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010). A defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees. *Cates v. State*, 402 S.W.3d 250, 251 (Tex. Crim. App. 2013). We must presume that a defendant who is determined by the trial court to be indigent remains indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial resources occurs and that material change is reflected in the record. CRIM. PROC. art 26.04; *Cates*, 402 S.W.3d at 251.

*Analysis*

It is well settled that it is improper for a trial court to assess court-appointed attorney's fees against an indigent defendant. *Cates*, 402 S.W.3d at 251–52. Additionally, when necessary, the State must appoint an expert to aid an indigent defendant; though the State need not "purchase for the indigent defendant all the assistance that his wealthier counterparts might buy," it must provide "the basic tools" to present the defense. *Ex parte Briggs*, 187 S.W.3d 458, 468 n.26 (Tex.

19

Crim. App. 2005) (quoting *Ake v. Oklahoma*, 470 U.S. 68 (1985)). This does not mean, though, that some court costs cannot be recovered. The Texas Code of Criminal Procedure requires a convicted defendant to pay court costs as they are "pre-determined, legislatively mandated obligations resulting from a conviction." *Osuna v. State*, No. 03-18-00239-CR, 2018 WL 3233733, at *10 (Tex. App.—Austin July 3, 2018, no pet.) (mem. op. not designated for publication); *see* CRIM. PROC. art. 42.15 (West Supp. 2020), art. 42.16 (West 2018).

The district clerk submitted an amended bill of costs charging Appellant $10,820 as a fee for his court-appointed attorney, $2,500 for expert witness fees, and $5,074 for the court reporter's record fee. Appellant had previously filed an affidavit of indigency certifying that he did not have the money to hire an attorney. Appellant also filed a motion for a free reporter's record supported by an affidavit, which the trial court granted. Appellant was determined to be indigent, and there is nothing in the record to indicate that he is no longer indigent or that the trial court made any determination that Appellant had financial resources to pay for the costs of his court-appointed attorney. *See* CRIM. PROC. art. 26.05(g).

Because the record does not demonstrate that the trial court found a material change in Appellant's financial circumstances, court-appointed attorney's fees may not be assessed against him. *See* CRIM. PROC. arts. 26.04(p), 26.05(g). The State concedes error as to the attorney's fees assessed, stating that "Appellant should not have had attorney's fees assessed against him, since he was found indigent and there was no subsequent determination that he was no longer indigent." In finding that Appellant should not be charged for his court-appointed attorney, we also find that the cost of the court-appointed expert witness should not be charged to Appellant. *See Martin v. State*, 405 S.W.3d 944, 948 (Tex. App.—Texarkana 2013, no pet.) ("Like the fees of a court-appointed expert or attorney, an appointed investigator is 'a basic tool' an indigent defendant can use to present a defense.").

20

However, the State contends that the cost of the court reporter's fee was a cost properly assessed against Appellant because a trial court can order an indigent defendant to pay court costs. We disagree. Appellant was determined to be indigent, and there is nothing in the record to indicate that he is no longer so. *See* CRIM. PROC. art. 26.05(g). Additionally, the trial court issued an order granting Appellant's motion for a free reporter's record.

When the trial court clerk erroneously includes fees as court costs, we should modify the bill of costs to remove the improperly assessed fees. *See Cates*, 402 S.W.3d at 252. Accordingly, Appellant's fourth issue is sustained. We modify the bill of costs to delete any requirement that Appellant pay $10,820 for court-appointed attorney's fees, $2,500 for expert witness fees, and $5,074 for the court reporter's record fee.

## *This Court's Ruling*

We modify the judgment of the trial court and the bill of costs to delete any requirement that Appellant pay court-appointed attorney's, expert witness, or reporter's record fees. As modified, we affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

July 22, 2021

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

21