**Opinion issued October 24, 2023**



In The

# Court of Appeals

For The

# First District of Texas

―――――――――――――

## NO. 01-21-00680-CR

―――――――――――――

**HUGO AGUILAR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 17-DCR-080285A**

---

## MEMORANDUM OPINION

A jury found appellant, Hugo Aguilar, guilty of the felony offense of aggravated sexual assault of a child[1] and assessed his punishment at confinement for

---

[1] *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (a)(2)(B), (e).

twenty-five years. In two issues, appellant contends that the trial court erred in excluding certain evidence.

We affirm.

## Background

The complainant, who was born in December 2001, testified that appellant is her father. For most of her childhood, she lived in a house located in Fort Bend County, Texas[2] with appellant, her mother, her four brothers, and her younger sister. The complainant had a "good relationship" with her mother, but she "barely saw" appellant because "he was drinking or . . . working."

The complainant stated that appellant had "sexually abused" her "more than one time" at the house where she lived in Fort Bend County. According to the complainant, the last time that appellant sexually assaulted her was in 2014 when she was twelve years old and out of school for the summer. At the time, the complainant shared a bedroom with her mother and her younger sister, and they all slept in the same bed together, which was a mattress on the floor. The bedroom had a curtain for a door.

On the night of the last sexual assault, the complainant stayed up late with her mother, making sandwiches to take to the beach the next day. After they were done,

---

[2] The complainant testified as to the address of her house located in Fort Bend County.

around midnight, the complainant's mother went to sleep, along with the complainant's younger sister. The complainant lay in bed but could not sleep; she had her eyes closed though. Appellant came into the bedroom and woke up the complainant's mother. Appellant "tr[ied] to touch" the complainant's mother, but they were no longer in a relationship, "so she asked him to stop." Appellant "got upset" and "walked out" of the bedroom.

The complainant felt scared because she knew that appellant was "probably going to come back" and "[b]ecause of what he [had been] doing to [her] the other nights." About ten or fifteen minutes later, appellant came back into the complainant's bedroom. The complainant's mother was asleep, and the complainant pretended to be asleep.

According to the complainant, appellant knelt next to the mattress by the complainant's legs. Appellant opened the complainant's legs and moved her so that she was lying on her back. The complainant kept her eyes closed. Appellant reached his hand under her shorts and under her underwear. And he put his fingers inside her vagina, which hurt. The complainant continued to pretend that she was asleep. The complainant opened her eyes as appellant walked out of the bedroom, and she saw him.

The complainant testified that she believed that appellant started sexually assaulting her when she was about eleven years old, but she could not recall how

3

many times he had done so. During other sexual assaults, appellant also made "contact with [her] breasts." Appellant would "put his mouth" on her breasts or touch them with his hands. He also bit her chest.

The complainant further explained that she had previously shared a bedroom with her twin brother. They had separate beds in the room. The complainant's twin brother would be asleep when appellant would touch her while she was staying in that bedroom. The complainant never called out when appellant sexually assaulted her because she was scared that "no one would believe" her.

The complainant also testified that in 2014, after she, her mother, and her younger sister moved out of the Fort Bend County house where appellant lived, she told her cousin, Leticia, who was fourteen years old at the time, about the sexual assaults. Leticia told her mother, Blanca, who was the complainant's aunt, and eventually the complainant's mother was informed.

The complainant stated that she had never recanted or said that she had lied about the sexual assaults, even though she continued to have contact with appellant over the years, when she was a child and a teenager. Having to spend time with appellant made her feel uncomfortable. The complainant's older brother, Carlos, wanted her to "request the charges [against appellant] be dropped."

The complainant's mother testified that appellant is her ex-husband and the complainant is her daughter. The complainant's mother had five other children with

4

appellant. Appellant and the complainant's mother raised their children in a home in Fort Bend County.[3] In December 2013, the complainant's mother hired at attorney and filed a petition for divorce because she and appellant "had a lot of problems." In June 2014, the complainant's mother moved out of the Fort Bend County house along with the complainant and the complainant's younger sister. Appellant continued living in the home with the complainant's four brothers. The complainant's mother, the complainant, and the complainant's younger sister moved in with Blanca, the complainant's aunt, and Blanca's daughters.

According to the complainant's mother, before she moved out of the Fort Bend County house, she, the complainant, and the complainant's younger sister slept in the same bedroom together and in the same bed. The complainant's mother usually slept closest to the wall, the complainant's younger sister slept in the middle, and the complainant slept on the outside of the bed. Occasionally, appellant would come visit the complainant's mother in the bedroom at night because he "wanted to hug" her, but she would not let him. She did not want to have a relationship with him anymore. Appellant would smell like alcohol, and appellant would be "a little bit upset" because of the complainant's mother's refusal.

---

[3] The complainant's mother gave the same address for the house in Fort Bend County that the complainant did.

In July 2014, after they had moved out of the Fort Bend County house, the complainant's mother learned information about appellant and the complainant that upset her. She received a telephone call from Blanca, and she went home. The complainant was with Blanca and appeared surprised and scared. The complainant's mother had a private conversation with the complainant, and during the conversation, the complainant was scared and afraid. At the end of July 2014, the complainant's mother told her divorce attorney and "asked her for a suggestion on what [the attorney] could do" to help her. The divorce attorney notified law enforcement. The complainant's mother did not immediately call law enforcement herself because she was afraid.

The complainant's mother further testified that after July 2014, she still allowed the complainant to have contact with appellant. And she stated that it was a "mistake" to do so. At one point, she asked for the charges against appellant to be dismissed. The complainant's mother and appellant's divorce was finalized in December 2015.

Fort Bend County Sheriff's Office Detective L. Vaught testified that on July 31, 2014, she was assigned to a sexual assault case involving appellant. An initial report had been taken on July 30, 2014 by another law enforcement officer. After reviewing the report, Vaught learned that the complainant's mother reported that the complainant, who was twelve years old, had made "an outcry of sexual assault

6

against [her] father." The sexual assault allegedly occurred at a house in Fort Bend County.[4]

According to Detective Vaught, the complainant was interviewed at the Child Advocacy Center in August 2014. And a sexual assault nurse examination ("SANE") was conducted in 2014.

Dr. Khara Breeden, a forensic nurse, testified that she performed the complainant's SANE, along with another nurse, on August 12, 2014. The complainant was twelve years old at the time, and her birthday was in December 2001. The complainant reported that appellant had been "[s]ticking his fingers in [her] vagina" and "[i]t stopped two or three weeks before [she and her mother] moved out" of the Fort Bend County house in the beginning of June 2014. The complainant stated that appellant "at night . . . would come" and he would "stick his fingers in [her] vagina." The complainant would "move around and [appellant] would get scared and leave." The complainant stated that it would happen "[a]lmost once a week." And she reported that he also "[b]it[] [her] chest" on her nipple. According to the complainant, the last time that appellant sexually assaulted her was in June 2014. Dr. Breeden stated that the complainant did not have any injuries as a result of being sexually assaulted but that was not uncommon.

---

[4]     Detective Vaught testified as to the address of the Fort Bend County house.

## Standard of Review

We review a trial court's ruling on the exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to exclude evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996) (internal quotations omitted). We will uphold a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

## Exclusion of Evidence

In his first and second issues, appellant argues that the trial court erred in excluding testimony about a prior sexual assault of the complainant because the testimony did not constitute "past sexual history" as contemplated by Texas Rule of Evidence 412, was admissible under two exceptions to rule 412, and was relevant, "probative[,] and not unfairly prejudicial." (Internal quotations omitted.) Further, appellant asserts that he was harmed by the trial court's exclusion of the testimony.

Texas Rule of Evidence 412 generally provides that evidence of the complainant's past sexual behavior is inadmissible in a prosecution for sexual assault or aggravated sexual assault. TEX. R. EVID. 412(a). However, the rule allows the admission of such evidence in certain circumstances including if the evidence is necessary to rebut or explain scientific or medical evidence offered by the State or is constitutionally required to be admitted. TEX. R. EVID. 412(b)(2). Even if the proponent of the evidence of past sexual conduct can satisfy his burden to demonstrate its relevance and an applicable exception under rule 412, the evidence of specific instances of past sexual behavior must still be excluded unless the probative value of the evidence outweighs the danger of unfair prejudice. TEX. R. EVID. 412(b)(3); *Robisheaux v. State*, 483 S.W.3d 205, 223–24 (Tex. App.—Austin 2016, pet. ref'd) (noting Texas Rule of Evidence 412 balancing test is more stringent than rule 403 balancing and weighs against admissibility). The proponent of the challenged evidence generally has the burden of establishing its admissibility by a preponderance of the evidence. *See White v. State*, 549 S.W.3d 146, 151–52 (Tex. Crim. App. 2018).

Outside the presence of the jury, the complainant testified that she remembered "describing something that hurt [her] to [her] grand[mother]." She told her paternal grandmother that her cousin, who was also a child, had "touched" her, but she did not "g[i]ve any details." The complainant did not say that her cousin had

9

"put[] his finger inside [her] vagina," and she never told her grandmother that her cousin "had penetrated [her] vagina with his fingers." She just told her grandmother that "he touched" her, and she never indicated that her cousin had touched her vagina in any way. While recalling the incident at trial, the complainant explained that her cousin had "touched" her "on [her] butt." And the complainant stated that she had told her mother about the incident, but her mother did not believe her; "[n]o one did." The complainant could not recall when the incident happened, but it was before her parents separated and before appellant started sexually assaulting the complainant. The complainant did not report the prior incident during her SANE.

Juana, appellant's sister, testified that at some point the complainant, when she was about five or six years old, confided in her about something that had happened while the complainant was in Mexico staying with the sister of the complainant's mother. The complainant told her that her cousin had "touched her where she did pee-pee and where she did poo-poo and she didn't like it." She described the incident by "saying that he touched her in those areas and on her legs." But the complainant did not say that her cousin put his finger in her vagina. Juana reported the incident to the complainant's mother. The complainant's paternal grandmother was also present during Juana's conversation with the complainant.

The complainant's paternal grandmother testified that she remembered when the complainant told her that "something bad had happened to her in Mexico."

10

According to the complainant's grandmother, the complainant said that "he would touch her every night and he would put his hand insider her underwear and his fingers inside her intimate part."

The trial court ruled that the evidence of the complainant's prior sexual assault by her cousin was not relevant and not admissible under Texas Rule of Evidence 412.

At trial, appellant argued that evidence of the complainant's prior sexual assault when she was a young child was relevant because Juana and the complainant's paternal grandmother had "narrated a prior specific incident that [was] similar to what [the complainant was] alleging in this [case]" and the jury "should be allowed [to know] that the [complainant] ha[d] some prior experience on a bad conduct that someone did with her." According to appellant, the complainant would not "know [how] to describe" the allegation against appellant if not for the prior sexual assault.

"Only relevant evidence is admissible, and the trial court . . . has the discretion to exclude irrelevant evidence." *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016); *see also* TEX. R. EVID. 402; *Hale v. State*, 140 S.W.3d 381, 396 (Tex. App.—Fort Worth 2004, pet. ref'd) ("If the evidence is not relevant, it is not admissible."). "Relevant evidence means having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable

or less probable than it would be without the evidence." *Montgomery*, 810 S.W.2d at 375; *see also* TEX. R. EVID. 401. To show the relevance of a child victim's prior sexual conduct, a "defendant must establish that the prior acts clearly occurred and that the acts closely resembled" those alleged in the case. *Hale*, 140 S.W.3d at 396; *see also Samsel v. State*, No. 01-20-00145-CR, 2021 WL 1618468, at *6 (Tex. App.—Houston [1st Dist.] Apr. 27, 2021, no pet.) (mem. op.). If the evidence of the complainant's prior sexual conduct is not relevant, it is properly excluded by the trial court. *See Lubojasky v. State*, No. 03-10-00780-CR, 2012 WL 5192919, at *9 (Tex. App.—Austin Oct. 19, 2012, pet. ref'd) (mem. op., not designated for publication).

Appellant, through the testimony of the complainant, Juana, and the complainant's paternal grandmother, has not established that the prior sexual assault of the complainant by her cousin closely resembled the acts that appellant was alleged to have committed in the present case. *See Roderick v. State*, 494 S.W.3d 868, 878 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Because [defendant] did not establish that the prior acts so closely resembled those of the present case that they could explain [the complainant's] knowledge about the sexual matters in question, the trial court did not abuse its discretion."); *Hale*, 140 S.W.3d at 397 (holding defendant did not establish admissibility of evidence of complainant's previous sexual knowledge because he did not "establish that the prior acts clearly occurred, nor did he prove that the acts so closely resembled the acts alleged against

12

[defendant] that they could explain the [complainants'] knowledge about the sexual matters in question"); *see also Castillo v. State*, No. 05-17-00524-CR, 2018 WL 3583577, at *4–6 (Tex. App.—Dallas July 26, 2018, pet. ref'd) (mem. op., not designated for publication) (trial court did not err in excluding evidence of sexual abuse of complainant by another person where evidence proffered did not "demonstrate that the acts so closely resembled the specific acts present in th[e] [current] case").

Here, a Fort Bend County Grand Jury returned a true bill of indictment alleging that appellant, on or about May 31, 2014, "intentionally and knowingly cause[d] the penetration of the sexual organ of [the complainant], a child under [fourteen] years of age, by the finger of [appellant]." At trial, the complainant testified that appellant had "sexually abused" her "more than one time" at her childhood home. The complainant believed that appellant had started sexually assaulting her when she was about eleven years old, but she could not recall how many times that he had done so.

The last time that appellant had sexually assaulted her was in 2014 when she was twelve years old and out of school for the summer. On the night of the last sexual assault, the complainant lay in the bed she shared with her mother and younger sister, but she could not sleep. She had her eyes closed.

13

The complainant explained that appellant came into the bedroom and woke the complainant's mother up. Appellant "tr[ied] to touch" the complainant's mother, but they were no longer in a relationship, "so she asked him to stop." Appellant "got upset" and "walked out" of the bedroom.

The complainant felt scared because she knew that appellant was "probably going to come back" and "[b]ecause of what he [had been] doing to [her] the other nights." About ten or fifteen minutes later, appellant came back into the complainant's bedroom. The complainant's mother was asleep, and the complainant pretended to be asleep.

Appellant then knelt next to the mattress by the complainant's legs. Appellant opened the complainant's legs and moved her so that she was laying on her back. The complainant kept her eyes closed. Appellant reached his hand under her shorts and under her underwear. And he put his fingers insider her vagina, which hurt. The complainant continued to pretend that she was asleep. The complainant opened her eyes as appellant walked out of the bedroom, and she saw him.

Dr. Breeden, who performed the complainant's SANE, testified that the complainant, who was twelve years old at the time, reported to her and another nurse that appellant had been "[s]ticking his fingers in [her] vagina" and "[i]t stopped two or three weeks before [she and her mother] moved out" of the Fort Bend County house at the beginning of June 2014. The complainant stated that appellant "at

14

night . . . would come," and he would "stick his fingers in [her] vagina." The complainant would "move around and [appellant] would get scared and leave." The complainant said that it would happen "[a]lmost once a week." And she reported that he also "[b]it[] [her] chest" on her nipple. According to the complainant, the last time that appellant sexually assaulted her was in June 2014.

Although appellant presented evidence that a prior sexual assault by the complainant's cousin occurred, we conclude that another child touching the complainant does not so closely resemble the evidence presented regarding appellant's sexual assault of the complainant in this case. *See Hale*, 140 S.W.3d at 396–97; *see also Johnson v. State*, No. 12-16-00218-CR, 2017 WL 3225071, at *1–3 (Tex. App.—Tyler July 31, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding trial court did not err in excluding evidence of previous sexual assault of complainant where adult defendant failed to show that previous sexual assault by child resembled evidence of defendant's sexual assault); *Bryan v. State*, No. 2-08-379-CR, 2010 WL 1137038, at *3–4 (Tex. App.—Fort Worth Mar. 25, 2010, pet. ref'd) (mem. op., not designated for publication) (holding evidence of prior assault was not sufficiently similar to assault alleged to have been committed by defendant). Thus, we hold that the trial court did not err in refusing to admit the testimony of the complainant, Juana, or the complainant's paternal grandmother

about a prior sexual assault of the complainant by her cousin because it found that it was not relevant.

We overrule appellant's first and second issues.

## Conclusion

We affirm the judgment of the trial court.


Julie Countiss
Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).